CELA LATOLA AND ANOTHER v.
FRED TURK AND OTHERS.

247 N. W. 2d 598.

October 1, 1976—No. 46019.

*Harper, Eaton & Gustafson, James Harper,* and *Earl B. Gustafson,* for petitioners.

*Fred A. Cina, John L. Holland, Carl J. Glavoa,* and *Ben P. Constantine,* for respondents.

PER CURIAM.

The opinion filed on October 10, 1975, in this case is withdrawn and the following opinion is substituted in its place.

Petitioners seek a writ of quo warranto to test the right of certain town officers to hold office. The challenged officeholders are all residents of the city of Aurora but hold office in the town of White, St. Louis County, Minnesota. These officers were elected by the voters of both the town of White and the city of Aurora. The two governmental units maintain separate taxing districts. We decline to issue the writ.

The facts necessary to dispose of the issue presented to us have been stipulated by the parties. The stipulated facts are:

"1. The petitioners herein are citizens of the United States of America and residents, freeholders and voters of the Town of White, St. Louis County, State of Minnesota.

"2. Respondents Fred Turk, Filmore Abrahamson and Ralph Garman are the elected supervisors of the Town of White. Ralph Garman has tendered his resignation as town supervisor but no successor has been selected.

"3. Adolph Hakala and Julia Strukel are the elected clerk and treasurer, respectively, of the Town of White.

"4. All of the above-named town officers, with the exception of Ralph Garman, are residents of the City of Aurora. Aurora is geographically situated within the Town of White.

"5. The Village of Aurora, now a statutory city, was incorporated as the Village of Aurora in 1903.

"6. The Town of White, consisting of all the area of congressional townships 57, 58 and 59, which included the Village of Aurora, was organized in 1906 by a petition to the St. Louis County Board as provided by law for the organization of towns in the State of Minnesota, which petition was signed by legal voters of the area proposed to be organized as the Town of White, the large majority of whom were residents, voters and freeholders of the Village of Aurora.

"7. Since its organization, the Town of White has conducted regular township government through an elected board of supervisors, clerk and treasurer.

"8. All respondents hold office pursuant to township elections which included voters from the City of Aurora.

"9. Persons residing outside the City of Aurora but in the Town of White are not eligible to vote in Aurora municipal elections and cannot hold any elected offices in Aurora.

"10. Residents of the City of Aurora have voted and held office in the Town of White ever since its organization.

"11. Since 1906, the City of Aurora (formerly the Village of Aurora) and the Town of White have been separate taxing districts and have separate valuations and different mill levies on property situated within their individual boundaries. The property within the town and city is assessed for tax purposes by the Town of White assessor.

"12. No property tax levy of the Town of White has been spread or levied against property in the City of Aurora by the County Auditor of St. Louis County.

"13. According to the 1970 United States Census the population of the City of Aurora is 2,531, and the population of the Town of White is 1,854.

"14. According to the records of the St. Louis County Auditor, the total 1975 assessed valuation for property in the City of Aurora is $2,891,033, and for the Town of White is $17,688,489.

"15. Prior to this proceeding no election has been held nor has any court action been taken by the town or city to separate

the town from the City of Aurora for election or assessment purposes. At the 1975 annual town meeting held in March, a motion was passed directing the town officers to take all necessary steps to effectuate a separation."

The parties could not agree on the facts relative to revenues received and expenditures made by the town of White and the city of Aurora. However, these facts are not necessary to dispose of the issue presented to us, namely, the right of the voters of the city of Aurora to vote in town elections and the right of residents of the city to hold public office in the town of White.

The city of Aurora is located within the geographical boundaries of the town of White. A town is merely a political subdivision of a county. L. 1858, c. 75. Thus, residents of the city of Aurora who are qualified to vote may vote in both city and county elections. Eligibility to vote in town elections is also provided by statute, Minn. St. 365.57. Minn. St. 365.44 provides a procedure to separate towns from cities for election purposes:

"Upon filing with the clerk of any town, except in any town having an area of more than two congressional townships and an assessed valuation of more than $1,500,000 or having a population of more than 1,000 including the population of any statutory city located within the town, of a notice, signed by not less than 50 voters thereof residing either within or without the statutory city to be separated stating that the question of the separation of such town for all purposes from any statutory city located therein will be voted upon at the next annual town meeting, the clerk shall insert such statement in the notice of such meeting, and the question shall be voted upon by a ballot. If a majority of the votes cast upon such proposition be in favor of the separation, such town shall thereafter be separated from such statutory city for all purposes. *Only voters residing without the statutory city shall be entitled to vote upon such question at said town meeting.*" (Italics supplied.)

An immediate inference from the emphasized language in this quotation is that on all other matters voters residing within the

statutory city are entitled to vote at the town meeting, at least until separation occurs. Since separation is "for all purposes," it follows that city residents could not vote in town elections after separation.

Petitioners seek to attack Minn. St. 365.44 on the ground it violates the equal protection clause of the Fourteenth Amendment. Specifically, they point out that under the statutory language the residents of the town of White are precluded from securing a separation election since there are more than two congressional districts located therein and their assessed valuation exceeds $1,500,000. We decline to reach this issue on the record before us. A determination of the equal protection issue, irrespective of which standard is applied, requires presentation in an adversary setting of considerably more factual information than is included in the stipulated facts submitted herewith. Further, there may be other townships affected by such a determination and they should have a right to present their positions in making a record for review by this court. A declaratory judgment action attacking the constitutionality of the statute, with notice to the attorney general, is an appropriate method of developing a proper record for review by this court.

Writ denied.